WELLFORD, Senior Circuit Judge,
concurring in part and dissenting in part:
I concur in Chief Judge Becker’s excellent analysis of the antitrust claims of plaintiffs against the defendants. I therefore share in the conclusion that the district court was in error in granting summary judgment to defendants on the antitrust claims before the court.
My disagreement is in respect to the treatment of the RICO claims. I dissent in that respect with some trepidation, realizing that Chief Judge Becker has recently authored several RICO decisions of this court flowing from the Supreme Court decision in Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). I begin, then, with an analysis of Holmes in respect to the RICO issues in this case.
First, however, I construe plaintiffs’ RICO claim to be as follows: as an intended consequence of defendants’ alleged predicate fraudulent actions and activities in attaining a special status as a Pennsylvania beer retailer/distributor and obtaining through that fraud from the state a special license and status (contrary to any legal entitlement), plaintiffs were economically damaged. The relevant cases discuss in the RICO context whether plaintiffs have standing to bring the claim against a defendant, and whether plaintiffs can establish commercial damages as a proximate cause of defendant’s illegal predicate acts.
Holmes' involved the issue of standing and of proximate cause under RICO by a party asserting securities fraud. Plaintiff, Securities Investor Protection Corp. (“SIPC”), was neither a buyer nor a seller of alleged manipulated stocks orchestrated by defendants. SIPC sued seventy-five defendant broker/dealers whose alleged illegal predicate acts brought about the collapse of several brokerage concerns which were members of SIPC, causing it to pay millions in damages to the failed member brokerage houses. Holmes acknowledged that § 1964(c) of RICO was “modeled on *269 the civil-action provision of the federal antitrust laws.” Id. at 267, 112 S.Ct. 1311. We agree that plaintiffs in this case have set out an antitrust claim that survives summary judgment treatment. Holmes interpreted proximate cause in its RICO analysis:
At bottom, the notion of proximate cause reflects “ideas of what justice demands, or of what is administratively possible and convenient.” W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 264 (5th ed. 1984).... [One requirement is] some direct relation between the injury asserted and the injurious conduct alleged.
Id. at 268, 112 S.Ct. 1311.
Was the plaintiff in Holmes simply complaining about “harm flowing merely from the misfortunes visited upon a third person by the defendant’s acts ... ”? Id. Holmes held that SIPC was complaining about an indirect injury, but it is important to consider why it reached that result. First, Holmes noted in footnote 19 that SIPC was not claiming to sue under a claimed right of any customer who actually purchased the manipulated securities. Id. at 272 n. 19, 112 S.Ct. 1311. Second, it is important to note that in Holmes, the broker/dealers, directly defrauded, who went into bankruptcy “have in fact sued” the same defendants. Id. at 273, 112 S.Ct. 1811. Those third parties might then vindicate the public interest in recouping the economic damages caused by the fraudulent defendants, and in punishing them by treble damages.
Because of the potential of multiple claims against defendants seeking damages as a direct result of the same illegal predicate acts and the necessity of difficult and complex apportionment, Holmes decided in favor of defendants that SIPC’s damages claims did not meet the proximate cause test. Our case is a very different one factually from Holmes. Plaintiffs here assert actions arising from defendants’ illegally attained status based on asserted fraud perpetrated on the state of Pennsylvania. This does not, in my view, vindicate the rights of private parties, such as plaintiffs, arising out of that fraud.[1] Unlike defrauded third party customers who had also sued defendants for the RICO actions in Holmes, neither Führer, nor any other master distributor, sought any such damages against the Troné defendants for the alleged illegal predicate activity. Indeed, Führer denied that any such illegal activity took place, and is an alleged co-conspirator in the antitrust activity.
In sum, I cannot construe Holmes as helpful to defendants in this case. Steamfitters Local Union No. 420 v. Philip Morris, Inc., 171 F.3d 912 (3d Cir.1999), I think, is distinguishable. In Steamfitters, customers or purchasers of the tobacco products had brought suit, or might be expected to bring suit, to vindicate plaintiffs clearly indirect claim. These customers or purchasers had varying degrees of proximate contributory or comparative negligence or knowledge about the danger of the tobacco product used or sold to them. Respectfully, I do not believe plaintiffs’ claims in the instant case to be as attenuated as in Steamfitters. It is closer to the standing and proximate causal relationship of plaintiff in Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494 (3d Cir.1998), in my view.
I do, therefore, respectfully dissent on the RICO element of this difficult case. I would hold that we should reverse and remand on both the antitrust and RICO claims.

. As Chief Judge Becker indicates, Pennsylvania may only seek criminal penalties and withdrawal of defendants’ special license, not damages.